Okay, well. Great. We'll just wait until he gets up to the table. Okay. Second and last case for the day is Glover v. Lafayette City-Parish Consolidated Government. We'll hear from you, Mr. Smith, for Mr. Glover. Yes, Your Honor. May it please the Court, I'm J. Arthur Smith III from Baton Rouge and I'm honored to represent Mr. Glover in this matter. This is a Title VII termination case. Our United States Supreme Court has said more than once that context matters, and context certainly matters in this case. Race, racial tensions permeated this case from the beginning to the end. There was a tragedy where a young black man by the name of Trayvon Pellerin was killed by Lafayette police officers, I believe, in August of 2020. That created a lot of tension and resentment in the African-American community, and... I'm interrupting for your advantage, just your time's quick, so we know the background to the case, and we know the background to Mr. Glover being hired. Let's get to his termination. Okay. Well, the first error that we respectfully submit to the Court is the trial court erred in holding that no prima facie case was established. Basically, what the district court held was since there was a temporary interim replacement of a black man for Mr. Glover, that defeated the prima facie case, even though thereafter, after the black man only served for two weeks and then was suspended and eventually fired, the district court held that defeated the prima facie case. Is that legal error in your mind, because Ross v. Judson is misapplied, or do you just say there's a fact issue since he held the job for two to four weeks, and he had the title interim? It's a fact issue to decide was he permanent or not. Which is your position, legal error? It's a fact issue. It's a fact issue. I think the jury could decide since the replacement after that was white, and the replacement after that, the permanent replacement was white, I think the jury could decide that yes, that's an inference of discrimination. Now, you know the district court said, but all of the people involved in hiring said that they had hoped that Griffin would be permanent, but for his own misconduct. That's what they said, and there's no dispute of fact as to their intent. Well, the problem with that, Jana, is that after discovery was over, the district court interjected a sui sante question about the appointment of Wayne Griffin, the circumstances about that, and the intent regarding that. We asked for limited discovery on that issue that was denied. Griffin's personnel file is not even in there? I'm sorry, Your Honor. Griffin's personnel file is not in there, in the record. So we don't know if the sexual misconduct predated when they put him in. There's evidence that a suit of sexual misconduct was filed. We would deny discovery on that. So what the city does is come in and submit all these declarations of interested parties, and that's the key to it, because Reeves v. Sanderson Plumbing Company says you don't grant summary judgment based on the testimony of interested parties. No, no, no, that's not accurate. I mean, all parties are interested to some degree or another. What we've got here, I guess, are these affidavits from the mayor, the city manager, I can't remember who else, but they all say Griffin was going to be the permanent replacement. In other words, they had no plans to interview, bring in other candidates, accept applications. He was going to be the guy, because he came in second place during the first search. Well, what evidence is there on the other side of that ledger, other than the fact that I guess a white woman eventually became the permanent chief? Well, we were not allowed to explore any of that, and that's a problem, because the jurisprudence of this Court, Hornsby v. Conoco, Whittings v. Trader Publishing Company, Neto v. Allen Plaintiff Nature Packing Company, Ross v. Judson Independent School District, all says that the temporary replacement does not defeat the prima facie case. And we rely on that. And you know, we believe that it's error for the Court to hold that that defeated— What discovery had occurred before? This was summary judgment, correct? Yes, Your Honor. Why wasn't this explored then by the plaintiff beforehand? Well, he really wasn't raised as any significant issue. But he knew he had to state a prima facie case. Well, of course. And we believe that, based on the jurisprudence of this Court, that we did prove a prima facie case. And those cases, it's over and over. This Court has held that over and over, as well as the courts of many other circuits have held that over and over. And that is a jury question. The jury can decide, because of the circumstances of that, that the permanent replacement is a replacement that really matters. And so that's our position with regard to that. Now, the next issue I'd like to go into is— Well, before you leave that— Yeah. Even if there isn't legal error, I thought you're saying there is an issue of fact as to whether or not they did intend him to be permanent, in terms of they called him interim. They called him interim. They called him temporary. That sounds like a fact issue. If they're going to say they wanted him to be permanent, they wouldn't call him interim.  Okay. It's in the defendant's brief. They called him temporary. They called him interim. And there's jurisprudence that says, this Court, that when you call him temporary or interim, that's what it is. And so— You're saying we've held that or we've left that issue open? I'm sorry, Your Honor. You're saying we've reached that issue or we've identified it and left it open? Your Honor, I'm sorry. May I get the earphones? I'm a little bit hearing impaired. I apologize. I want to make sure I hear your question. My question was, are you saying that we've actually reached that issue in our cases or that we've identified it and left it open? No. We've reached that issue. We've cited the cases over and over in our brief. And that's the ones I just cited out loud. The Court has held that a temporary replacement doesn't defeat the prima facie case. And so, the next issue I'd like to discuss, if I may, Your Honor, is the issue of pretext. The defendant's claim that Mr. Glover was fired because he misrepresented the defendant misrepresented two things. Number one was a statement that he had done an internal affairs investigation of a citizen complaint. And number two, that he had made a misstatement that he had looked at a body cam video concerning that investigation when he did not. Mr. Glover submitted an affidavit that said very directly that he did order an internal affairs investigation. In fact, the investigation was done by the head of internal affairs, a Lieutenant Chastity Arwood. And the testimony was that Ms. Arwood found that the citizen complaint was unjustified and that she recommended it be dismissed. Mr. Glover testified that he did review the body cam, but only after the investigation. And so, they raised this up to say, okay, we've got evidence here, and these are misrepresentations. The problem is, and I want to go back a little bit now, I apologize for the reverse order, but at the time of the termination, the only reason it was given to Mr. Glover for his termination was they had lost confidence in him. Now, we respectfully submit, looking at the McDonnell and Douglas chain of events and analyses, they have to submit, after a prima facie case is made, they have to submit a legitimate non-discriminatory reason for the termination. Under Burdine, under Patrick v. Ridge, and under Alfadero v. Texas Rangers, that legitimate non-discriminatory reason has to be supported by some specificity, some facts that were showing. That's all they had at the time. We lost confidence. Well, but they explained why. It was because of these two reasons. The investigation ordered in the body cam footage, supposedly he misrepresented some things to a city council person or the mayor, whomever it was. I mean, that's specific enough, is it not? That's way later. That did not occur until the civil service litigation before the local civil service board ensued. You're saying they didn't point to those facts until after he filed the EEOC complaint? Well, after he filed a civil service charge in the EEOC complaint. That's when they said? Yes, yes. Well, tell me, explain quickly, his response in part was to get the expert to say there's forged material here. What was that about? Well, that was a document that they relied upon as one of their main exhibits to exhibit in, and with the alterations that appeared on the surface that maybe Chief Glover did not order a shift investigation, but it was evidence that that document had been altered and the trial court simply disregarded that evidence. But Glover testified directly that he ordered an internal affairs investigation that's corroborated by the testimony we submitted by declaration, and it's a clear issue of fact as the pretext because that's the reason they said they fired him. Well, but you've got to show it's pretext for race discrimination here. He said he was fired because of his race. Right. They can be wrong. They can have a poor reason, a bad reason, but it's got to be pretext for discrimination for an improper reason. Where's the evidence that it was that? Well, you have to look at the context. That's why I said context matters. The race permeated this entire employment relationship. The same guy that hired him fired him. You've got the same actor inference, this atmosphere of race relations or whatever. That really doesn't mean that the decider for hiring or firing was motivated by race. Well, you've got to look at the Russell versus McKinney case. When the circumstances dramatically change, but between the time of the hiring and the timing of firing, the same actor...  What changed was the fact that Chief Glover, for the first time in the history of the Lafayette Police Department, fired white police officers for brutalizing black citizens. And that created a serious backlash among the white officers. It created a serious backlash among the white union police leaders to the extent that the white union police officers went to the mayor to have Mr. Glover fired. Do we know anything about... I'll stipulate the union went to the mayor. Do we know anything about what was said, what was done, and that it influenced the mayor's decision? We have evidence they went to the mayor seeking his termination. And Your Honor, I go back to the Reeves versus Sanderson series of analyses, the McDonnell versus Douglas series of analysis. Once we show that there's a genuine issue of interior fact under the Caldwell case, it should be tried. And we have a prima facie case. We have very questionable, so-called legitimate non-discriminatory reasons. Mr. Court never got to McDonnell-Douglas. It stopped the prima facie case, correct? The trial judge did, yes, Your Honor. If we just look at the prima facie case ruling, there is none. It rested it on the interim permanent considerations we talked about. But then Judge Wilson asked you about the inference, the same-actor inference. Could you just list in the minute and a half you have left, what evidence, not context, but evidence would rebut the inference, the same-actor inference? Did Glover's declaration? Yes. I think basically what rebuts the same-actor inference is the change. Under Russell versus McKinney, if there's a change in circumstances from the time of the hiring to the time of the firing, that renders the same-actor inference inapplicable. And also, there's a case that I've cited at page 35 of my brief that says where there's a strong evidence of pretext, the same-actor inference does not apply. And I believe that we have very direct evidence in this case of pretext. And Glover gave a declaration? Yes. And he said he was fired because of race? He didn't say that directly. I mean, I think that would be an impermissible conclusion. But the atmosphere, everything that happened, and the fact that he has met the requirements of McDonnell Douglas, he says, a primary facie case, probably not a legitimate non-discriminatory reason, he's black, and he meets all his requirements, and he's shown clearly a fact issue as to pretext. Nothing more is required. All we're asking for is a trial. I mean, this man has been accused of lying and all this. He's a distinguished law enforcement professional for 36 years. He came to Lafayette after a national search. According to the evidence, there was glowing comments on his work until one day before he was fired. And, Your Honor, I thank you very much. Thank you. You still have rebuttal? Thank you, sir. Mr. Babineau? May it please the Court, Counsel, my name is Joel Babineau, and I represent the appellees Lafayette City Parish Consolidated Government, sometimes referred to them as LCG, as well as the former Mayor President, Josh Guillory. If there are any issues you want me to address, I can, but there are two what I would call primary issues here. One is what I call the fourth prong replacement issue, and the second is the expanded prima facie case analysis. On the first issue, appellees contend that the district court correctly found that appellate failed to establish a prima facie case because he was replaced by someone within the same protected class. Why did you call him interim then? So his official title, it's in the declaration of Mr. Rick Zeno, the Human Resources Manager for LCG. His official title was Chief of Police, the same as was Mr. Glover. But everybody called him interim until these sort of hindsight declarations that came in at summary judgment. Is that true? I would disagree with that, Your Honor. The sexual allegations, sexual harassment allegations came in about three weeks after he was appointed. They were making their rounds to present him to the City Council as the Chief of Police to the Fire and Police Civil Service Board. So what happened is with about three weeks into his appointment for the first time, and this is in the declarations of all three of our witnesses, there had never been any allegations before. There was never any evidence that there was any sexual harassment. Mr. Griffin had a 19-year stellar career with the Lafayette Police Department. So his personnel file is in the record? How do we know when these came in and whether there were others before? This was in the declaration of Mr. Rick Zeno, the Human Resources Manager, as well as the declarations of Mr. Josh Guillory. When you say this, you mean that the allegations only emerged after they'd given him the position? That is correct. And Sidra Wingarder, the former Chief Administrative Officer, they firmly testified that there was no knowledge, there was no complaint, human resources confirmed, there was never any complaint of sexual harassment. The allegations came up for the first time after he was introduced to the City Council as the Chief of Police. But you were calling him interim, though, before this allegation surfaced? What happened is he got put on an interim status because he was placed on an administrative leave while the Internal Affairs could conduct an investigation into the sexual harassment. He was put on an interim status post the allegations. That's important. So you just stated that the only time the word interim emerges is after the allegations come to light? I don't know that I can say that. Well that's what my next question was going to be, what was he called during that pre-two-week period? He was presented as the Chief of Police. Where's that in the evidence? I think that, I don't know that we have anything in the evidence that, well other than Was Glover termed the interim ever when he was brought in? I don't know the answer to that. He was never confirmed. Was Estridge ever called interim? She was, so what happens under the Fire and Police Civil Service rules, I think they're all interim until they get confirmed. In the record, will we ever see interim associated with either Glover or Estridge? In this record, no. And yet we will, as to Mr. Griffin? No, in the declaration of Mr. Rick Zeno, he says that his official title was Chief of Police, as far as HR was concerned. Isn't that just, but others say it was interim. How is that not a disputed issue of fact? Because we have to look to what the intent was. What case says that intent supersedes both title and short time? What case do you have that says that? Well, in terms of the case. What case authority states that the intent of those who hired and who are being sued supersedes the official title given plus the short amount of time that a temporary person is in the office? Do you have a case that says that? Well, if you do look to the cases of Mercer versus Capital Management, you also have the cases of No, what's your best case for that proposition, that the intent of those who are being sued for firing him on racial grounds supersedes both the time and the title they'd given him? I think you can refer that from the Ross versus Judson Independent School District case and the Jones versus Western Geophysical case. Let's just start with Ross. If you can infer from Ross, I thought the court's ruling in Ross was that Mr. Valerie was there for three years and there was no disputed issue of fact that he was interim. Correct. Valerie was there for three years, but the court indicated in the language in its finding is that you looked at whether or not that person is deemed or considered a temporary until a seat holder, a place marker, until a permanent can be selected. And it saw no evidence of that, but here you've got the guy being called interim. At least it sounds like you get to explore that as opposed to consult the people that are being sued who just say that after the fact. We would respectfully submit that the key is what was the intent of the appointing authority? And what's the case that stands for intent superseding the intent of the people who made the decision to fire him? I think it can be inferred from Ross. It can be inferred from Jones versus Western Geophysical. It can be, there's a Mercer versus Capital Management case from the Fifth Circuit. There's some district court cases. Could you? Go ahead.  No, no. Let's back up a little bit. Judge Ho asked counsel opposite this, I believe, I mean, to the extent that we're really fixated on this interim versus permanent status, what is the status of our law in terms of how important that is as a replacement? In other words, have we addressed that issue as a court? The district court said no. Counsel opposite said yes. I have not, this honorable court has not precisely addressed that issue in the context of the facts and circumstances that we have. But can we say that it doesn't matter whether he's interim or a permanent? I don't think the title matters. I think it's what is the intention? Because again, we're looking at intentional discretion. Well, say the intent, the question is different. Set aside intention. Okay. If an interim or temporary person is put in place versus a quote permanent person is put in place, does that matter for our analysis of the fourth prong of the prima facie case? If the person is truly temporary in order to search for a permanent replacement, then the court could overlook that temporary. But I would again respectfully submit that it gets back to when that person is placed. I would say it doesn't matter the title that's called because you could defeat it by just calling someone permanent all the time. The title is probative. But it could be used, I understand, but what is I think more relevant to the question is when that person is appointed, whatever their title may be, was the intention that they would be the long-term chief of police? If you point back to intent, I don't know how in the world that's not a jury question. What was the intent of the witness who says, no, no, no, we called him interim, but he was an interim? So we have the mayor president who was the appointing authority, the chief administrative officer all said we were not doing another national search. And what we have factually, what we have is Mr. Griffin came out second in the national search that occurred ten months before. Right. I mean, the district court talked about this. He was second place. There was no posting of the job. There were no applications accepted. There was no national search, local search, other search, and then you've got the same actor inference. I mean, the district court went through those things, but again, the replacement was called interim. He was there for two weeks before he was suspended or what have you. The case law tends to suggest, I'm talking about case law, not necessarily our courts, but suggest you look past that temporary replacement to see whether the fourth prong is met. And the intention of folks after the fact, it just strikes me very difficult to say that's as a matter of law, you're entitled to judgment. I don't think they've expressed their intentions after the fact. I mean, obviously, they testified at the civil service board hearing. So first they challenged the proceduralness of his termination because everybody, every chief of police has to serve a 12-month period before they can get civil service protections. And so they're always on an at-will basis. They were consistent at the civil service, Ms. Wingardner and Mr. Zeno testified at the civil service board hearing that, of what their intent was in replacing Mr. Griffin. We were consistent at the EEOC proceedings, we were consistent with the district court. They didn't come in and say, oh no, our intent was for him to be permanent after there was a lawsuit or a claim. But you've got nothing in evidence, as I apprehend your answer to earlier questioning, that shows at the time he was introduced to the council, he was introduced as flat out the chief of police. I mean, you've got the HR guy's declaration, right, but no city council person says, I was at the meeting, he was introduced as chief of police, I talked with him about it, and we look forward to his glorious tenure. Anything like that. That is correct. There's no, we don't have any declarations or testimony from any council member. How hard would it be to get a city council person to say, yeah, no, he was introduced as the chief of police? Well, I guess what we relied on is that we have it in the personnel file, as attested by the HR director, that his official title was chief of police. I think probably what happened is, again, this isn't on the record, but once the allegations came out, and he was placed on administrative leave, and an internal affairs investigation was going to be conducted, I mean, he eventually, four months later, was demoted back to sergeant. Besides Griffin, let's focus on Glover for a minute. Where would you point us to in the record where we can understand what his lie was? Where was it confirmed that he lied relating to an unverified anonymous citizen's complaint? We have the declaration of Captain Chastity Arwood, who was in the internal affairs division, who reported to Ms. Wingarder that at a civil service board meeting where the citizen complaint was being reviewed, that he made misrepresentations about the scope of an internal affairs investigation, and he stated then that he had not reviewed any body cam footage, because it had not been. She reported that that was a misrepresentation, because there was no internal affairs investigation was done, and she tested this. He ordered her to just call the citizen and find out if it ever happened before. The response was no, so he ordered it closed. He then issued, and this is all in the record, he then issued a letter to the citizen saying, after an internal affairs investigation, which is a specific term under the rules, after an internal affairs investigation has been occurred, and after viewing the body cam footage, we find no merit to the claim. So the lie was specifically that he responded to the complaining citizen saying, we did an investigation and they hadn't, or we did an investigation and he said it included reviewing the body cam, and that conclusively was shown that he hadn't reviewed it. Both of those, because an internal affairs investigation, there's different levels. There's a shift level investigation, an administrative review, and then an internal affairs investigation is a formal, you read the police officer bill of rights, and you go through this whole process. So Captain Arwood testified that an internal affairs investigation did not take place and that body cam footage was not reviewed. Two days after she reported this, he sent, an appellate issued a letter to a council member because there was a, the council member got an email saying about police corruption, that there was no investigation into this citizen's complaint. Appellate sent an email, copied Ms. Wingardner and Mr. Guillory, stating that after an internal affairs investigation and review of the body cam footage, we found that there was no merit to the claim. Armed with that knowledge, whether it was erroneous or not, we'd have to prove that he made a misrepresentation under the case authority. We can make a decision, I think judgmental, based on bad reason, good reason, erroneous information. Based on that information, that's what they made the decision to terminate his employment because they believe that he had made misrepresentations to the top law enforcement officer for the Lafayette Police Department, made misrepresentations to a fire and police civil service board, as well as to a council member. So that formed the basis of their loss of confidence in him and he was told in a meeting at Mr. Guillory's office by Ms. Wingardner, who was also his supervisor, that he was being terminated for loss of confidence. Their big complaint is that, well, you didn't put anything in writing explaining your loss of confidence to me. Well, we explained it at the fire and police civil service hearing. There's no case authority that requires us to give a dissertation as to all the reasons why we've lost confidence. We assigned a reason, and loss of confidence can certainly be a legitimate, non-discriminatory reason. The district court never got to this because it stopped saying no prima facie case analysis. It stopped at the prima facie case analysis. Now, the court did do an expanded prima facie case analysis. It didn't just say, oh, you didn't meet the fourth prong. It went through and said, is there any evidence that presents circumstances that we can infer that there was some discriminatory motive and intent? And the court found that there was none. That the police union issues, first of all, we don't know that a meeting took place. Did the district court ever even acknowledge Officer Washington's very lengthy statement? I don't know that the district court actually specifically addressed Mr. He said there's nothing but your self-serving or your conclusory statement, Glover. Nothing more. Without more. But Officer Washington, in a very extended, detailed, sworn statement, said he was fired because he's black. But that was his opinion. Okay. He wasn't involved in the decision-making process. But the district court doesn't even acknowledge that. It is not addressed in the district court's decision. That is correct. So how do we know? On what ground do you look? It was close to 60 paragraphs of analysis. And I'm focused mostly on paragraphs 55 and 56. Officer Washington said, yeah, he was fired because of his race. How is that not relevant? At least for the district court to acknowledge. Well, what the district court did address, he didn't go through it. We had motions eliminated. We had objections that were filed to the testimony because there was a lack of personal knowledge, so forth. But the court never ruled on that. Never, never addressed that, to your point, never specifically addressed his declaration or the details of his declaration. But what the district court did find is that any police union issues that were alleged, any racial demographics of the police department. Well, I mean, it still sort of stuck on you have another officer who was sworn under oath that the man was fired because of race, and the district court doesn't acknowledge it. There could be ways to dismiss it. I think my understanding, my recollection, is that he said he believed that race played a role. But again, that's belief. I mean, that's... Well, has the district court said that? Or are you asking us to make that determination in the first instance? Do you have the declaration? My memory is that paragraphs 55 and 56 are pretty detailed. Well, to your original point, the district court did not address it one way or the other. I mean, he didn't say, I discount it, didn't say, I accept it. But what the district court did kind of, what I would say, in globo, looked at his allegations about police union issues or involvement, racial demographics. I think what the court referred to there was fractions that were asserted that were unidentified. Is there evidence that the police union went to the mayor to ask for the chief to be terminated? No. And there's no date of when this occurred. There's no content of what the subject matter of that was. Where does it come from then? I mean, where is it in the record? Mr. Glover, I think in his declaration said that he believed that there was a meeting by a police union president with mayor president. But we don't know what would have, well, we don't know if the meeting actually took place because he obviously wasn't there and didn't say, I was at the meeting and here's what was said. Why wasn't that developed in discovery? I mean, did it never come up in a deposition or document? They didn't take any depositions. So the police union issues that were alleged, the racial demographics, the factions that were unidentified, the district court found provide no insight into what Mr. Guillory and Ms. Wingarder's intent was when they made the decision to terminate him. Doesn't matter what noise is going on outside. If there was, in fact, any noise going outside, what is the decision maker's intent? Well, I mean, but if the union met with the mayor and the union exerted influence over the mayor politically or otherwise, would that not be enough to say that, to show that they influenced the decision? If there is evidence, there's a cat-paw theory that if there's evidence, actual evidence that they influenced and had it out for the appellant, but there's no evidence of it. But I thought Glover said that and I thought Washington said that. They didn't attest that they were at a meeting and knew what happened. They just believed that the union. Do they have to be that specific? Well, they have to have an evidentiary basis to say it. I mean, they can't just say, well, we believe that the union influenced. We believe that there were fractions that were out there. Again, it focuses on what was the intent of the decision makers and is there evidence that those decision makers were influenced. If we found that there was a prima facie case, should we send this back to the district court for assessing the rest of the McDonnell-Douglas framework? I mean, because the district court did not address legitimate nondiscriminatory reasons in pretext, there has been no ruling on that. I would suggest that there's enough evidence to find that there is no pretext, but the district court never ruled that there was no pretext because we never got there. It ended at the prima facie case analysis. Did the city parish argue that not only was there no prima facie case, but there's also no pretext? We did. You raised all three prongs. We did, and we even addressed it in our appeal brief that even if there's a prima facie case, that there's no evidence to establish that there was pretext or a sham in order to effectuate unlawful discrimination, again, for all the reasons. I mean, Mr. Griffin was selected based on the most objective criteria you can get. He placed second in the national search 10 months before, and he had a 19-year stellar career with no accusations ever of sexual harassment. The allegations surfaced only after, or were only made, after he was appointed. And the record shows that, and the HR manager confirmed that. There was no complaint ever prior to his appointment as the chief of police to succeed. If the complaint was enough to remove him as chief of police, why was he just given his old job back? So it was an internal affairs investigation. Four months later, the administration terminated him because there was a finding of misconduct, and he appealed it to the Fire and Police Civil Service Board. Terminated him altogether or as chief? Terminated his employment altogether. He appealed to the Fire and Police Civil Service Board, and he was ordered reinstated, and so he was put in the position of sergeant. Somewhere in my mind, I thought it was his prior position that he returned to. He was put back in the position of—I may have misspoke. So he was demoted into the position of sergeant after the internal affairs investigation. What he challenged was whether or not he should have been paid for that entire time, and the Civil Service Board found that he should have only been docked, I think, 30 days' pay. But for his reinstatement, though, he would have been terminated from the police force altogether? No, I believe I misspoke on that. I think the administration—I think it may have demoted him, but I can't say that for certain. Thank you, counsel. Thank you. Mr. Smith, do you have a rebuttal argument? Yes, Your Honor, just a few points. The defendants say at page 31 of the brief that Mr. Griffin was appointed chief of police on an interim basis, and that's what they called him, and I think that's very important to the analysis. With regard to the investigation that was done, Chastity Allwood was that lieutenant in charge of internal affairs. She did the investigation. She determined that the citizen complaint was without merit. She recommended that it be dismissed. After that, Mr. Glover did review the body cam video, and he said that he reviewed it. He didn't ever say he reviewed it before the investigation, but when the dispute arose, he reviewed it, and that's what he said, and that's uncontradicted in the record. Now, it's also important to realize that the means and methods of the investigation are left to the head of internal affairs. That's what they do. The chief is not the person who does the investigation himself. He reviews the investigation and makes a determination. That's all set forth. All the procedures are set forth in the record, and I believe that's very clear. Also, they tend to rely on this, what they call the honest belief rule. I've cited the Owens case in my reply brief that this court says, as I read it, that we really don't have an honest belief rule. These are facts for the jury. Let's suppose that the defendant says that, well, we fired the guy because we thought he was from Mars, and the plaintiff says, well, no, I'm from New Orleans. Well, I mean, that's a fact issue. The reasonableness of the so-called honest belief is a classic jury question, and it should go to the jury. With respect to the so-called legitimate nondiscriminatory reason, as Your Honors recall, at the time of the termination, all that they told Mr. Glover was that they lost confidence. He asked why. He continued to ask why. They never did tell him. They put in the formal report of the termination. They put in the formal report to the Louisiana Unemployment Compensation Office. They didn't put any reason. It wasn't until the civil service litigation ensued that they came up with this idea about, well, maybe he made a misrepresentation. Well, the handsome case from this court is precisely on that point. Those post hoc rationalizations really don't count as legitimate nondiscriminatory reasons and do not suffice to set forth a legitimate nondiscriminatory reason. What are your responses to the comments made that he was presented to be the police chief, categorically the police chief? Well, he was presented as the interim police chief. I mean, so in that brief, he was called the interim police chief. He was called a temporary police chief. Mr. Glover was the permanent police chief. That's evidence. But is it true, per counsel opposite's statement, that that was just pending the city council confirmation? Well. And they just didn't have time to do it. Well, we didn't have any discovery on that. I just go back to the idea that we got a summary judgment here that issued on the basis of interested parties testifying, which is at odds with Reeves v. Sanderson Plumbing Company, and we didn't have any discovery as to that. Those are self-serving statements who had no opportunity to address. I'd like to make just a couple more points, if I may, Your Honor. There's a case in the 11th Circuit that fits hand in glove with my analysis of the Hindson case. It's Mott v. Bell Helicopter Textron, 196 Federal Appendix 773, 11th Circuit, 2006. It's where an employee asked. You only have a few seconds. If you didn't put that in your brief, he's had no opportunity for you to bring it up in rebuttal. So I've got a factual question. You didn't rely much on Officer Washington's declaration. I thought it favored you. Do you want to comment on that? Yes, sir. It did favor us, you know, very much, and it was disregarded or ignored by the district court. As Your Honor has set forth, it's very complete, and it's from a person in a high-ranking position in the police department. Thank you both. Thank you all very much. Appreciate it. The case is submitted, and that concludes the sitting for today.